## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANGELA D. MCALISTER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0016 (RMC) |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL, | ) | |
| UNITED STATES POSTAL SERVICE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS

Defendant, John E. Potter, Postmaster General, United States Postal Service, ("USPS"), by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for dismissal of this action for failure to exhaust administrative remedies.

*Pro se* plaintiff is hereby advised that failure to respond to a dispositive motion may result in the district court granting the motion and dismissing the case. See Fox v. Strickland, 837 F.3d 507, 509 (D.C. Cir. 1988).

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities and to the entire record in this case. A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,

*Jeffrey A. Taylor (by)*

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____
QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANGELA D. MCALISTER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0016 (RMC) |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL, | ) | |
| UNITED STATES POSTAL SERVICE | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

**I.    Introduction**

Defendant hereby submits this memorandum of law in support of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  For the reasons set forth below, Defendant respectfully requests that the Court dismiss this matter as premature.

**II.    Background**

**A. Plaintiff's Administrative EEO Complaint and Appeal to the Commission**

Plaintiff, Angela D. McAlister, is a former mail processing clerk with the United States Postal Service ("USPS" or "Agency").  *Attachment 1.*  This complaint stems from a September 1, 2005 incident between the Plaintiff and her supervisor, in which the Plaintiff physically assaulted her supervisor during a disagreement regarding her leave.  Id. at pgs 8-11.  On that same date, Plaintiff was placed in an emergency off-duty status without pay and later, on October 17, 2005, Plaintiff was issued a notice of removal.  Id.

On December 16, 2005, Plaintiff filed a formal administrative EEO complaint alleging

discrimination on the basis of race, sex, age, disability, and retaliation, when: (1) she was placed in an emergency off-duty status without pay on September 1, 2005 and (2) she was issued a notice of removal on October 17, 2005. *Attachment 1, pg 3.*

On August 23, 2006, in proceedings before EEOC Administrative Judge del Toro ("AJ del Toro"), the Agency filed a motion for summary judgment arguing that Plaintiff could not establish a *prima facie* case of discrimination or retaliation and that the Agency had legitimate, nondiscriminatory reasons for the actions at issue, which Plaintiff could not prove were pretextual. *Attachment 1, pgs 7-25.* On September 12, 2006, AJ del Toro issued an order entering summary judgment in favor of the Agency. *Attachment 1, pgs 1-6.* AJ del Toro held that summary judgment was appropriate because there were no genuine disputes of material fact and Plaintiff failed to meet her burden with respect to her claims of discrimination and retaliation. Id. at pg 4. Moreover, AJ del Toro also held that Plaintiff had no evidence to refute the Agency's legitimate, nondiscriminatory reasons for her emergency placement and notice of removal. Id.

On September 25, 2006, the Agency issued its Final Agency Decision ("FAD"), which adopted the decision of the Administrative Judge finding no discrimination. *Attachment 2.* In the FAD, the Agency notified the Plaintiff of her right to either file a civil action in United States District Court *or* to appeal the FAD to the Equal Employment Opportunity Commission ("Commission"). Id. at pgs 1-3.

On or around October 23, 2006, the Plaintiff elected to appeal the Agency's FAD to the Commission. *Attachment 3.* On November 17, 2006, the Commission advised the Agency that it had received the Plaintiff's appeal. *Attachment 4.* On November 21, 2006, the Agency then filed

2

its opposition to Plaintiff's appeal. *Attachment 5.* To date, the Commission has not yet ruled on the Plaintiff's appeal.

### B.    Plaintiff's District Court Complaint

On January 4, 2007, Plaintiff filed the instant complaint in the U.S. District Court for the District of Columbia. *Docket Entry 1.* Though her allegations are not entirely clear, Plaintiff appears to be alleging the same issues raised in her administrative EEO complaint and appeal that her placement in an emergency off-duty status without pay and her removal were the result of discrimination and retaliation. Id. at pg 1; see also *November 6, 2006 letter attached to Plaintiff's complaint.* Plaintiff is requesting a jury trial, $900,000.00 in compensatory damages, and corrective action for all involved Agency management officials. Id. at pg 6. In pertinent part, Plaintiff does not allege that she has exhausted her administrative remedies.

### III.    Legal Standard

Fed. R. Civ. P. 12(b)(1): A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. Id.

Fed. R. Civ. P. 12(b)(6): In resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court will treat the complaint's factual allegations as true and draw all reasonable inferences therefrom in the plaintiff's favor. Sullivan-Obst v. Powell, Secretary, Department of State, 300 F.Supp.2d 85, 91 (D.D.C. 2004). Therefore, the complaint will be dismissed if the plaintiff can

3

prove no set of facts in support of his claim that would entitle him to relief. Id. Finally, while
"many well-pleaded complaints are conclusory, the court need not accept as true inferences
unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." Id.

## IV.    Plaintiff Failed to Exhaust Her Administrative Remedies Properly

Plaintiff's complaint is premature and must be barred for failure to exhaust administrative
remedies.  Specifically, it is undisputed that the Plaintiff filed the instant action without waiting
180 days after filing an administrative appeal to the EEOC, as is required by the EEOC's
regulations.  See 29 C.F.R. § 1614.407(d).

The D.C. Circuit Court recognizes that the EEOC has been given "broad authority to
enforce [Title VII's] antidiscrimination mandate within the federal government, including
responsibility for issuing regulations to control federal agencies' processing of discrimination
complaints." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing 42 U.S.C. §
200e-16).  Pursuant to this authority, the EEOC has established detailed procedures for resolving
administrative complaints, including a series of time limits for filing formal charges. Id. (citing
29 C.F.R. §1614).  It is well settled that failure to file suit within the time limits proscribed
requires dismissal because the time limits, which serve as the basis for the limited waiver of
sovereign immunity in section 2000e-16(c), must be strictly construed.  Brown v. General Servs.
Admin., 425 U.S. 820, 835 (1976); Irwin v. Department of Veterans Affairs, 498 U.S. 89, 94
(1990).  In fact, courts have strictly enforced the time deadlines of the Title VII complaint
process.  Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985) ("plaintiff who fails to comply, to the
letter, with administrative deadlines ordinarily will be denied a judicial audience").

Regarding the filing of a civil action from the administrative process, the time frames for

4

doing so are governed by 29 C.F.R. § 1614.407.[1]  In this case, it is undisputed that

Plaintiff appealed the FAD to the EEOC on or around October 23, 2006 and that, to date, the

EEOC has yet to render a decision on that appeal.  As such, Plaintiff is required to proceed under

subsection (d), which limits filing of a civil action to "[a]fter 180 days from the date of filing an

appeal with the Commission if there has been no final decision by the Commission."  29 C.F.R. §

1614.407(d).  The D.C. Circuit has recognized that the rationale behind Title VII's waiting

requirements is to give the Commission time to "informally resolve as many charges as

possible."  Martini v. Fed. Nat'l Mortgage Ass'n, 178 F.3d 1336, 1338 (D.C.Cir. 1999)

(construing 42 U.S.C. §2000e-5(f)(1), which required Title VII complaints to wait 180 days after

filing charges with the EEOC before suing private employers in federal court).  In this case,

Plaintiff filed the instant civil action on January 4, 2007, only 73 days after filing her EEOC

appeal. *Docket Entry 1*.  Unlike the more typical cases of delay, Plaintiff here filed prematurely.

Nevertheless, the result should be the same because the regulation was equally unsatisfied, and

Plaintiff took affirmative steps to derail full administrative consideration.[2]  See Sommatino v.

---

[1]  Specifically, 29 C.F.R. § 1614.407 restricts an employee's right to bring a civil action
to four defined periods:

    (1)     Within 90 days of receipt of the final action on an individual or class complaint if
          no appeal has been filed;
    (2)     After 180 days from the date of filing an individual or class complaint if an appeal
          has not been filed and final action has not been taken;
    (3)     Within 90 days of receipt of the Commission's final decision on an appeal; or
    (4)     After 180 days from the date of filing an appeal with the Commission if there has
          been no final decision by the Commission.

[2]  The requirement that an aggrieved employee must first seek relief in the agency that has
allegedly engaged in discrimination is "not a mere technicality."  Park v. Howard Univ., 71 F.3d
904, 907 (D.C. Cir. 1995), cert. denied, 519 U.S. 811 (1996).  Rather, "it is part and parcel of the
congressional design to vest in the federal agencies and officials engaged in hiring and promoting
personnel 'primary responsibility' for maintaining nondiscrimination in employment."  Kizas v.

United States, 255 F.3rd 704, 708 (9th Cir. 2001) (abandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review).

Therefore, because this case does not fall within any of the four categories set out in 29 C.F.R. § 1614.407, it was improperly filed and should be dismissed. Williamson v. Shalala, 992 F. Supp. 454, 457 (D.D.C.1998) ("non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in court"), aff'd, 1998 WL 545420 (D.C. Cir. July 20, 1998), cert. denied, 525 U.S. 915 (1998); see Smith v. Henderson, 137 F.Supp.2d 313, 316 (S.D.N.Y. 2001) (failure to comply with the time provisions of 29 C.F.R. § 1614.407 warrants dismissal of the case).

## V.  Conclusion

For the foregoing reasons, this complaint should be dismissed for failure to exhaust administrative remedies.

Respectfully submitted,

_Jeffrey A. Taylor (by)_

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_Rudolph Contreras_

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_Quan K. Luong_

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417

---

Webster, 707 F.2d 524, 544 (D.C. Cir. 1983), cert. denied, 464 U.S. 1042 (1984). The "sine qua non for civil action is the filing of a complaint [with the agency]." Porter v. Adams, 639 F.2d 273, 276 (5th Cir. 1981); see also Brown, 425 U.S. at 833 (noting that Title VII "provides for a careful blend of administrative and judicial enforcement powers.").

Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _7th_ day of March, 2007, I caused service of the foregoing **DEFENDANT'S MOTION TO DISMISS** to be made on the *pro se* plaintiff via first class mail:

> **ANGELA MCALISTER**
> 5524 Kennedy Street
> Riverdale, MD 20737

Respectfully submitted,

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## WASHINGTON FIELD OFFICE
### 1801 L Street, N.W., Suite 100
### Washington, D.C. 20507

|  |  |
|---|---|
| Angela D. McAlister,<br>Complainant,<br><br>v.<br><br>John E. Potter, Postmaster General,<br>United States Postal Service,<br>Agency. | EEOC No. 570-2006-00357X<br><br>Agency No. 4K-200-0006-06<br><br>**Date: September 12, 2006** |

## ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated September 12, 2006, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached.

This office is also enclosing a copy of the hearing record for the Agency.

This office will hold the report of investigation and the complaint file for sixty days, during which time the Agency may arrange for their retrieval. If we do not hear from the Agency within sixty days, we will destroy our copy of these materials.

It is so ORDERED.

For the Commission:

Frances del Toro
Administrative Judge

Enclosures

1

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing documents within five (5) calendar days after the date they were sent *via* first class mail. I certify that on September 12, 2006, the foregoing documents were sent *via* first class mail to the following:

Angela McAlister
5524 Kennedy Street
Riverdale, MD 20737

Veola Jackson
5724 Northwood Drive
Baltimore, MD 21212-3218

Karla M. Malone
U.S. Postal Service
Capital Metro Law Office
400 Virginia Avenue, SW
Suite 650
Washington, DC 20024-2730

Manager EEO Compliance and Appeals
U.S. Postal Service
Capital Metro Operations
P.O. Box 1730
Ashburn, VA 20146-1730

Frances del Toro
Administrative Judge

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1801 L Street, NW., Suite 100**
**Washington, D.C. 20507**

|  |  |
|---|---|
| Angela D. McAlister,<br>Complainant,<br><br>v.<br><br>John E. Potter, Postmaster General,<br>United States Postal Service,<br>Agency. | EEOC No. 570-2006-00357X<br><br>Agency No. 4K-200-0006-06<br><br><br>**Date: September 12, 2006** |

## DECISION

Angela D. McAlister, Complainant, has satisfied the procedural prerequisites for a hearing, but the evidence does not warrant one. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Celotex Corp. .v. Catrett*, 477 U.S. 317, 322-23 (1986). Complainant alleged discrimination on the bases of her sex (female), age (DOB: 8/15/1951), disability (stress), and retaliation (prior EEO activity), when: (1) on September 1, 2005, she was placed in Emergency Placement, Off Duty Status; and (2) on October 17, 2005, she was issued a Notice of Removal.

On August 25, 2006, the Agency filed a Motion to Dismiss Pursuant to 29 C.F.R. §§ 1614.107(a)(1) and 1614.109(b), or Alternatively for Findings of Fact and Conclusions of Law Without a Hearing Pursuant to 29 C.F.R. § 1614.109(g) ("Agency's motion"). To date, Complainant has not filed a an opposition to the Agency's motion. I have reviewed the entire record before me in this matter, which consists of the Investigative Report (IR) and the Agency's motion. Upon consideration of the record before me, I **GRANT** Summary Judgment in favor of the Agency and conclude that the Agency did not discriminate against Complainant.

(3)

I find that the Agency's motion correctly states the material facts and applicable legal standards.[1] Additionally, the Agency's motion shows that the Agency has articulated legitimate, nondiscriminatory reasons for its actions and that there are no genuine issues of material fact or credibility that require resolution at a hearing. Thus, Summary Judgment in favor of the Agency is appropriate for the reasons stated in its motion, *i.e.*, Complainant failed establish a *prima facie* case of retaliation, sex, age, and/or disability discrimination; and Complainant failed to produce any evidence that could refute the Agency's articulation that: (1) she was placed on Emergency Placement, Off Duty Status, because she physically assaulted her supervisor, and (2) she was issued a Notice of Removal because she engaged in violent acts in contravention of the Agency's policies and regulations regarding violence and conduct in the workplace. In addition, Complainant failed to present any other evidence that could prove that the Agency discriminated against her. Accordingly, **I GRANT** Summary Judgment in favor of the Agency in this matter.

**Frances del Toro**
**Administrative Judge**

---

[1] A copy of the Agency's motion is attached to this decision.

2

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. § 1614.109(b), 109(g) or 109(i). **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.** EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the hearing file and this decision. The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order. The complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. § 1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached. A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has <u>not</u> issued its final order within forty (40) calendar days of its receipt of the hearing file and this decision, the complainant may file an appeal to the Commission directly from this decision. In this event, a copy of the Administrative Judge's decision should be attached to the appeal. The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036
> Fax No. (202) 663-7022

Facsimile transmissions over 10 pages will not be accepted.

## COMPLIANCE WITH AN AGENCY FINAL ACTION

An Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency. <u>See</u> 29 C.F.R. § 1614.504. If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the complainant in writing. If the complainant is not satisfied

with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The complainant may file such an appeal within thirty (30) calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least thirty-five (35) calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

**UNITED STATES OF AMERICA**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**

| | | |
|---|---|---|
| ANGELA D. MCALISTER, | § | EEOC NO. 570-2006-00357X |
| Complainant, | § | |
| | § | AGENCY NO. 4K-200-0096-06 |
| v. | § | |
| | § | |
| JOHN E. POTTER, | § | |
| Postmaster General, | § | |
| United States Postal Service, | § | |
| Agency. | § | |

## POSTAL SERVICE'S MOTION TO DISMISS PURSUANT TO 29 C.F.R. §§ 1614.107(a)(1) AND 1614.109(b), OR, ALTERNATIVELY, FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW WITHOUT A HEARING PURSUANT TO 29 C.F.R. § 1614.109(G)

The Postal Service moves that the Administrative Judge dismiss McAlister's claim for failure to state a cause on which relief can be granted, or, alternatively to issue findings of fact and conclusions of law without a hearing, pursuant to 29 C.F.R. §§ 1614.107(a)(1), 1614.109(b) and 1614.109(g). The Postal Service seeks dismissal for failure to state a claim because McAlister filed her claim in the negotiated grievance procedure under the collective bargaining agreement and this case is current pending binding arbitration scheduled for September 13, 2006. The Postal Service seeks summary judgment because it has a legitimate, nondiscriminatory explanation for its treatment of McAlister, who has no evidence that the explanation serves as a pretext for unlawful discrimination. Meanwhile, McAlister hasn't presented sufficient evidence to put the Postal Service to its burden of coming forward with its explanation, because she cannot establish a *prima facie* case of sex, age, disability discrimination or retaliation. Given these conditions, McAlister's claim presents no genuine issues of material fact or of

credibility that would require a hearing to resolve. Consequently, the Commission ought

to grant the Postal Service judgment it is favor, as a matter of law.

## I.    STATEMENT OF ALLEGATIONS

Angela McAlister alleged that she was discriminated against on the basis of sex

(female), age (d.o.b. 8/15/1951), disability (stress) and retaliation (prior EEO activity)

when: 1) on September 1, 2005, she was put in an Emergency Placement in Off-Duty

Status and 2) on October 17, 2005 she was issued a Notice of Removal.[1]

## II.    STATEMENT OF FACTS

McAlister (49 year old female) was a mail processing clerk during the relevant time
period subject to this complaint at the Curseen-Morris Post Office, Washington DC.[2]

Bobby Fauntleroy (43 year old male) Supervisor Customer Service, Curseen-Morris Post
Office, was McAlister's immediate supervisor.[3] On September 1, 2005, McAlister
approached Fauntleroy with a leave slip (PS 3971) stating she was denied access to the
medical unit. Fauntleroy stated that she was not denied access to the medical unit, but
that McAlister reported to the medical unit before it was open. Fauntleroy informed
McAlister that the 3971 was inaccurate. As he proceeded to scratch out the inaccurate
information McAlister grabbed the 3971, he then grabbed it back from her and turned
around. While he was turned around, McAlister began shoving his and hitting his back
before being restrained by Mr. McAlister.[4] He had no role in the Notice of Removal
dated October 17, 2005.[5]

Nancy Carreras, (49 year old female), Manager Curseen-Morris Post Office, placed
McAlister on Emergency Placement in Off-duty Status without Pay on September 1,
2005, for assaulting Fauntleroy. Fauntleroy contacted Carreras following the assault
stating that McAlister pushed him, hit him several times and was swinging at him.
McAlister violated the Postal Service's zero tolerance on violence on the workroom
floor. Carreras concurs on all suspensions and removals.[6]

Jamelle Wood (35 year old female), Supervisor Customer Service, Curseen-Morris Main
Post Office. Wood witnessed McAlister assaulting Fauntleroy on September 1, 2005.

---

1 IF, Issues to be investigated, p. 1.

2 IF, Affidavit A; IF, Exhibit 1.

3 IF, Affidavit B.

4 IF, Affidavit B; IF, Exhibit 7.

5 IF, Affidavit B.

6 IF, Affidavit C.

She was responsible, along with Fauntleroy, for making the decision to place McAlister on Emergency Placement on September 1, 2005. Carreras and Vincent McKinney were responsible for the paperwork placing McAlister on Emergency Placement. The Emergency Placement was discussed with Carreras. Wood initiated the Notice of Removal and Carreras concurred. [7]

On September 10, 2005, a pre-disciplinary interview (Pre-D) was scheduled with McAlister regarding the September 1, 2005 incident.[8] She failed to appear at the pre-discipline interview and failed to provide a reason for her non-attendance.[9]

On September 14, 2005, the Inspection Service completed its investigation regarding the altercation instigated by McAlister. Herman McAlister admitted that his wife placed her hand on Fauntleroy's back. Mr. McAlister immediately grabbed is wife to keep things from getting worse and escorted her out of the building before security arrived.[10]

McAlister filed a grievance on her Emergency Suspension which was denied on September 26, 2005[11] and is currently scheduled for arbitration on September 13, 2006.[12]

On October 19, 2005 she filed a grievance on her Removal. On November 9, 2005 the grievance regarding the removal was denied at Step 2 and appealed to arbitration. The arbitration is scheduled for hearing on September 13, 2006.[13]

Vincent McKinney, (40 year old male) Supervisor Customer Service, Curseen-Morris signed the Emergency Placement in Off-Duty Status dated September 1, 2005.[14]

Melody Gaskins, (50 year old female), Manager Customer Service Operations, Curseen-Morris Main Office.[15]

Herman McAlister, McAlister's spouse, witnessed the attack of Fauntleroy and he restrained his wife before is got worse and escorted her from the facility before security arrived.[16]

Fauntleroy was unaware of any permanent physical, medical or mental impairment of McAlister.[17]

---

[7] IF, Affidavit D.

[8] IF, Exhibit 5.

[9] IF, Affidavit B.

[10] IF, Exhibit 6.

[11] Exhibit 1, attached.

[12] Exhibit 2, attached.

[13] Exhibit 3, attached.

[14] IF, Exhibit 4.

[15] IF, Affidavit E.

[16] IF, Exhibit 6, also see Exhibit 4, attached.

[17] IF, Affidavit B.

McAlister does not have a record of a stress related impairment and she was not regarded as having an impairment. She did have a limitation of no prolonged standing and she was accommodated.[18]

All employees are treated the same.[19]

McAlister's most recent prior protected activity occurred in 2001.[20]

Wood had no knowledge of McAlister's prior protected activity.[21] Carreras and Fauntleroy were unaware of McAlister's prior protected activity until contacted by Bomar (a.k.a. Tomar); however, Tomar was investigating this case and not a prior EEO case.[22] They did not become aware of the EEO until after the Notice of Removal was issued[23] and McAlister does not have any EEO activity between 2001 and the filing of this case.[24]

McAlister's sex, age, disability and prior protected activity were not factors in management's decisions to issue the Emergency Suspension on September 1, 2005 and the Notice of Removal dated October 17, 2005.[25]

McAlister violated the following Postal Policies and Regulations:

- Employee and Labor Relations (ELM) § 661.53: No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct or other conduct prejudicial to the Postal Service;

- ELM § 665.11: Employees are expected to be loyal to the United States Postal government and uphold the polices and regulations of the Postal Service;

- ELM § 665.13: Employees are expected to discharge their assigned duties conscientiously and effectively;

- ELM § 665.16: Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good

---

18 IF, Affidavits B & C.

19 IF, Affidavits B.

20 IF, Exhibit 2.

21 IF, Affidavit D.

22 IF, PS Form 2570, p. 9.

23 IF, Affidavits B & C.

24 IF, Exhibit 2.

25 IF, Affidavits B, C & D.

character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute. Employees are expected to maintain harmonious working relationships and not do anything that would contribute to an unpleasant working environment;

- ELM § 665.3: Employees will cooperate in any postal investigation;

- ELM § 666.51: Employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual will nevertheless carry out the order and immediately file a protest in writing to the official in charge of the installation, or appeal through official channels. This policy is an extension of other existing polices including the Postal Service Joint Statement on Violence and Behavior in the Workplace; and,

- Capital Cluster Policy: ...violence or threats of violence will be taken seriously and will not be tolerated by anyone at any level of the postal service. This includes, but in not limited to: any acts of profanity that leads to a hostile workplaces and any employee harassment or intimidation, including verbal psychological and sexual.

## III.    THE SUMMARY JUDGMENT STANDARD

It is well established that proceedings pursuant to 29 CFR § 1614.109(g) are patterned on summary judgment principles found in Federal Rules of Civil Procedure, rule 56.[26] The standards for granting summary judgment under Rule 56 are likewise well established.[27]

An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party.[28] A fact is "material" if it has the potential to affect the outcome of the case. If a case can only be resolved by weighing conflicting

---

26 *McDade v. Dep't of Transp.*, 2002 EEOC Appeal No. 01A03792 (August 14, 2002).

27 *Id.*

28 *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986); *Oliver v. Digital Equip. Corp.*, 846 F.2D 103, 105 (1st Cir. 1988).

evidence, summary judgment is not appropriate. In the context of an administrative proceeding, an administrative judge may properly consider summary judgment only upon a determination that the record has been adequately developed for summary disposition.

The Postal Service will show that there are no material facts in dispute in this case and summary judgment is appropriate on all counts.

### IV.    ARGUMENT AND AUTHORITY

#### A.    McAlister cannot establish a *prima facie* case of disparate treatment based on reprisal.

In order to establish a *prima facie* case of reprisal discrimination, McAlister must establish that (1) she engaged in prior protected activity, (2) the acting agency official was aware of the protected activity, (3) she was subsequently disadvantaged by an adverse action, and (4) there is a causal link between the protected activity and the adverse action.[29] The causal connection may be shown by evidence that the adverse action so closely followed the protected activity that reprisal is inferred.[30]

McAlister's prior EEO activity occurred in 2001.[31] Clearly, McAlister is not entitled to an inference of reprisal because there is no temporal proximity between her prior EEO activity and the alleged adverse action because her previous EEO activity occurred four years prior to the incidents subject to this EEO complaint. In *Jenkins v. U.S. Postal Service*[32] the Commission stated that for the purpose of establishing a *prima facie* case of retaliation, it looks to the evidence, such as the temporal proximity of the protected activity and the adverse action. Although there is no set time, a "connection

---

29 *Holmes v. U.S. Postal Service*, EEOC Appeal No. 01A30986 (January 9, 2004).

30 *Id.*

31 IF, Exhibit 2.

32 *Jenkins v. U.S. Postal Service*, EEOC Appeal No. 01910116 (September 30, 1991).

may be inferred by evidence that the protected conduct was closely followed by the adverse action."[33]

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close."[34] The passage of as little as three months to one year does not give rise to an inference of retaliation.[35]

Given the time span between the prior EEO activity and the alleged adverse action there is no inference of retaliation.[36] Surely if the Commission has held that the passage of as little as three months does not give rise to an inference of retaliation, the passage of six months, as in this case, does not either.

Further, the RMOs had no knowledge of any prior EEO activity.[37] Carreras and Fauntleroy testified that they became aware of her prior EEO activity when they were contacted by Mr. Tomar (a.k.a. Bomar) after the Notice of Removal was issued. However, the record evidence shows that "Tomar" contacted both Carreras and Fauntleroy while investigating this EEO complaint. Further, even if they did have knowledge of prior protected activity the temporal proximity is too remote. Where complainant fails to show any evidence that management had knowledge of her prior

---

33 *Stokes v. Secretary of Defense*, EEOC Appeal No. 0933573 (May 16, 1994)(citing *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2nd Cir. 1980)).

34 *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Hendrix v. Dep't of the Navy*, EEOC Appeal No. 01A10340 (March 8, 2001)(citing *O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

35 *Hendrix v. Dep't of the Navy*, EEOC Appeal No. 01A10340 (August 8, 2001), (three months is insufficient to establish a causal connection; *Martinez v. Dep't of the Air Force*, EEOC Appeal No. 01850531 (March 16, 1987)(two months is not temporally proximate to infer retaliatory motivation); *Webster v. U.S. Postal Service*, EEOC Appeal No. 01842494 (July 1, 1986) (one year is insufficient to establish a temporal link).

36 *Speece v. U.S. Postal Service*, EEOC Appeal No. 01831994 (May 8, 1984).

37 IF, Affidavit B, p. 6; Affidavit C, p. 6; Affidavit D, p. 5; Affidavit E, p. 5.

protected activity, the case must be dismissed.[38] McAlister cannot satisfy the 2nd or 4th prong of a *prima facie* case of disparate treatment based on reprisal discrimination. Thus, McAlister has failed to establish a *prima facie* case of reprisal discrimination.

**B.**   **McAlister failed to establish a *prima facie* case disparate treatment based on sex.**

In order to establish a *prima facie* case of disparate treatment on the basis sex discrimination, McAlister must render facts that, if unexplained, reasonably give rise to an inference that: (1) she is a member of a statutorily protected class; (2) she was subjected to an adverse employment action; and (3) similarly situated employees outside her protected class were treated more favorably in like circumstances.[39] The Postal Service acknowledges that she belongs to a protected group (female) and that she was subjected to an adverse employment action – Emergency Suspension and Removal. However, she cannot establish the 3rd element of a *prima facie* case of discrimination that other similarly situated individuals, outside of her protected class, were treated more favorably, under the same circumstances.

In order to be considered similarly situated comparative employees must have reported to the same supervisor; must have been subject to the same standards governing discipline; and must have engaged in conduct similar to complainant's, without differentiating or mitigating circumstances that would distinguish their misconduct or the appropriate discipline for it.[40]

---

38 *Washington v. Dep't of Homeland Sec.*, EEOC Appeal No. 01A45443 (November 18, 2004).
39 *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).
40 *White v. Dep't of Defense*, EEOC Appeal No. 01A22115 (June 12, 2003) (*citing O'Neal v. U.S. Postal Service*, EEOC Request No. 05910490 (July 23, 1991)).

McAlister is a 49 year old female. She suggests the following **employees were** treated more favorably when they were involved in an altercation and not **removed: Mr.** Hubbard and Mr. Perry. Fauntleroy testified that he does not know anyone **by the name** of Hubbard or Perry and that he did not supervise anyone by those names.[41] **He further** testified that no one had engaged in the same behavior as McAlister. Carreras **testified** that Hubbard is a supervisor; therefore he is not similarly situated with McAlister and **that** she does not know anyone by the name of Perry. She further stated that neither **employee** worked under her supervision.[42] Gaskin and Wood testified that they do not know of any employees by the name of Hubbard or Perry.[43] McAlister has not presented any **similarly** situated employees who were treated more favorably.

McAlister failed to provide any evidence to suggest that comparative **employees** were treated more favorably. As such her claim of sex discrimination fails.

C.    **McAlister cannot establish a *prima facie* case of age discrimination because she failed to establish that her age was a motivating factor.**

In order to establish a *prima facie* case of age discrimination, McAlister **must** establish that: (1) she is a member of the protected class (i.e., over 40 years of **age**), (2) she was subjected to an adverse personnel action, and (3) a causal connection **exists** between her age and the Postal Service's actions.[44] The same burden-shifting framework

---

41 IF, Affidavit B.

42 IF, Affidavit C.

43 IF, Affidavits D & E.

44 *O'Connor v. Consol. Coin Caterer's Corp.*, 116 S. Ct. 1307, 1309 (1996).

set forth in *McDonnell Douglas* is applicable to claims brought under the ADEA.[45] She must establish that she was discriminated against "because of her age."[46]

McAlister cannot establish the third required element a *prima* facie case of age discrimination because there is not a causal connection between her age and the Postal Service's actions. Liability in an age discrimination case "depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision . . . That is, [complainant's] age must have actually played a role in the employer's decision making process and had a determinative influence on the outcome."[47]

The investigative file is utterly devoid of any evidence that McAlister's age played any role in the Postal Service's decision in issuing the Emergency Suspension and the Notice of Removal. She has nothing more than rank speculation to support her allegations that she suffered discrimination and speculation is insufficient to sustain her burden of proof in this case.[48]

The courts have held that in an ADEA case the comparative employee must be "significantly younger" than the complainant.[49] Here, there is simply no evidence that age was a motivating factor in management's decisions. In fact the record clearly establishes that age was not a motivating factor, Fauntleroy (43) and Wood (35) made the decision to place her on the Emergency Suspension but did not issue the Suspension.[50] Carreras (49)

---

45 *Patrick v. Dep't of Homeland Sec.*, 2004 U.S. Dist. LEXIS 154 (January 6, 2004).

46 *Artis v. Dep't of Veterans Affairs*, EEOC Appeal No. 01A34501 (November 24, 2004); *Pollistock v. Dep't of Homeland Security*, EEOC Appeal No. 01A43087 (June 15, 2005).

47 *Sullivan v. Crowell*, EEOC Appeal No. 01940217 (November 9, 1994) (age must have been the determinative factor in agency's actions).

48 *Belenker v. U. S. Postal Service*, EEOC Appeal No. 01942220 (November 29, 1994).

49 *O'Connor v. Consol. Coin Caters Corp.*, 517 U.S. 308, 312 (1996); *Latamore v. Dep't of Justice*, EEOC Appeal No. 01A41742 (April 30, 2004).

50 IF, Affidavit D.

issued the Suspension.[51]  Wood was responsible for issuing the Notice of **Removal** and

Carreras was the concurring official.  Wood is the only management official who is not

within McAlister's age group.  However, Wood did not make any decisions alone and the

concurring officials were all within McAlister's age group of over 40 and either the same

age or a couple years younger.  Additionally, McAlister has not presented any evidence

that similarly situated employees were treated more favorably or that her age was the

motivating factor in management's decisions; therefore, she cannot establish a *prima facie*

case of age discrimination and this case must be dismissed.

**D.**    **McAlister failed to establish a *prima facie* case of disability because she cannot show that she is disabled as defined under the Rehabilitation Act or that the Postal Service denied her a reasonable accommodation.**

To prevail on a disability discrimination claim under the Rehabilitation Act,

McAlister must demonstrate that: (1) she is disabled within the meaning of the

Rehabilitation Act of 1973;  (2) she is a "qualified" individual with a disability; (3) the

agency took an adverse action against her; and (4) the agency failed to provide her with a

reasonable accommodation.[52]  McAlister cannot establish elements one, two or four: that

she is disabled within the meaning of the Rehabilitation Act; that she is a qualified

individual with a disability and she was denied a reasonable accommodation.

**1.    McAlister is not disabled, she does not qualify as an individual with a disability and she was not denied a reasonable accommodation.**

McAlister is not entitled to protection under the Rehabilitation Act, because she

does not qualify as "disabled" under the Act.  The Act defines disability as 1) a physical

or mental impairment that substantially limits one or more of the major life activities of

---

51 IF, Affidavits C & D.

52 *Curry v. Dep't of Justice*, EEOC Appeal No. 01A41202 (April 28, 2005).

such individual; 2) someone with a record of such impairment; or 3) someone who has been regarded as having such an impairment.[53] While the Postal Service concedes that McAlister has a standing limitation, it contests that the she is disabled because "merely having an impairment does not make one disabled for the purposes of the [Act]"[54] nor does it establish a "record" of a disability.[55]

Under the Rehabilitation Act, McAlister must show that her impairment substantially limits a major life activity. In *Toyota*, the Supreme Court held that a "major life activity" is one of central importance to daily life.[56] In order to qualify for protection under the Act, the limitations claimed as a result of the impairment must be *substantial*.[57] "The word 'substantial' . . . precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities."[58] Rather, to be substantially limiting, the impairment's impact must be permanent or long-term, and it must "prevent or severely restrict" the complainant's ability to engage in major life activities.[59] Evidence of a medical diagnosis of the impairment is insufficient to show its substantially limiting effect.[60] Because the Court takes into account an individual's ability to compensate for an impairment, the complainant must offer evidence of the extent of the limitation the impairment has caused.[61]

---

53 29 C.F.R. § 1630(2) (g).
54 *Toyota Motor Mfg. v. Williams*, 122 S. Ct. 681, 690 (2002).
55 *Davis v. U.S. Postal Service*, EEOC Appeal No. 01A42275 (August 25, 2005).
56 *Toyota* at 693. A major life activity could include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. With respect to working, however, the Supreme Court has held that the Complainant is "required to show an inability to work in a 'broad range of jobs,' rather than a specific job."
57 29 C.F.R. § 1630(2)(g)(1).
58 *Toyota* at 691.
59 *Id.*
60 *Id.*
61 *Id.*

She alleged that her disability is stress; however, she has not provided any documentation to support her claim. She has no record of a disability and specifically no documents establishing a stress related impairment.[62] Nor has she provided a scintilla of evidence that any major life activity is substantially affected. McAlister's only medical restriction is no prolonged standing[63] from an injury to her right shoulder and lower back which does not constitute an impact on any major life activity, including working. She is able to work an 8 hours day 5 days a week. Accordingly, McAlister does not merit protection under the Rehabilitation Act because she has failed to satisfy the threshold requirement of proving an impairment that substantially limits a major life activity. This alone is grounds for dismissal.[64]

**E.    The Postal Service has articulated a legitimate, non-discriminatory reason for issuing the September 1, 2005 Emergency Placement in Off-Duty Suspension and issuing the Notice of Removal dated October 17, 2005.**

The issue of whether or not a complainant has established a *prima facie* case of discrimination can be dispensed with when the employer articulates a legitimate, non-discriminatory reason for its actions. Even if the named employees were considered similarly situated to the McAlister and that she established a *prima facie* case of discrimination, the employer should prevail because it can articulate a legitimate, nondiscriminatory reason for its actions.[65] If the employer provides such a reason, the complainant must establish that the reason offered by the employer was not the true

---

62 *Davis v. U.S. Postal Service*, EEOC Appeal No. 01A42275 (August 25, 2005).

63 IF, Exhibit 3.

64 *Hunt v. Dep't of Interior*, EEOC Appeal No. 039707117 (August 27, 1997).

65 *Banks v. Dep't of the Army*, EEOC Request No. 03A00103 (March 16, 2001) (*citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981)).

reason but was a mere pretext for discrimination.[66] Pretext is established when the complainant shows that the employer's legitimate nondiscriminatory reason was false and that discrimination was in fact the real reason for the disputed action.[67] Similarly, there must be evidence of discrimination in a discrimination suit.[68]

McAlister is a mail processing clerk.[69] McAlister instigated an altercation with her supervisor by pushing, hitting and swinging at him. As a result of her violence in the workplace and violation of Postal policy regarding violence in the workplace, management was required to place her on Emergency Suspension, investigate the allegations and as a result of the investigation issued the Notice of Removal. The Inspection Service was alerted and conducted their independent investigation.[70] During the Inspection Service interview, McAlister's spouse, Herman McAlister, admitted that he witnessed McAlister placing her hand on Fauntleroy's back and that he (Mr. McAlister) grabbed her and escorted her from the facility before the security could arrive.[71] McAlister was provided an opportunity to explain her actions of September 1, 2005 at the Pre-D scheduled for September 26, 2005.[72] However, she did not appear at the Pre-D and did not communicate with management of her intentions to appear or defend her actions.

The Postal Service implemented Article 16.7 the National Agreement between the American Postal Workers Union and the Postal Service of the Local Memorandum of

---

66 *Burdine*, 450 U.S. at 253.

67 *St Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 515 (1993); *Pedrazoli v. U.S. Postal Service*, EEOC Appeal No. 01970833 (October 3, 2000).

68 *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141-142 (2000).

69 IF, Affidavit C, p. 7; IF, Exhibit 2.

70 IF, Exhibits 6 & 7.

71 IF, Exhibit 6. Also see Exhibit 4, attached.

72 IF, Exhibits 5 & 7.

Understanding. Article 16.7 requiring placement in Emergency suspension when an employee is a threat to themselves or others.[73]   McAlister also violated ELM §§ 661.53; 665.11; 665.13; 665.16; 665.3; 666.51[74] the Joint Statement on Violence and Behavior in the Workplace[75] and the Capital Cluster Policy of the violence in the workplace.[76]

McAlister's violation of the following polices and regulation resulting in her emergency suspension and ultimate removal:

- Employee and Labor Relations (ELM) § 661.53: No employee will engage in criminal, dishonest, notoriously disgraceful or immoral conduct or other conduct prejudicial to the Postal Service;

- ELM § 665.11: Employees are expected to be loyal to the United States Postal government and uphold the polices and regulations of the Postal Service;

- ELM § 665.13: Employees are expected to discharge their assigned duties conscientiously and effectively;

- ELM § 665.16: Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably upon the Postal Service. Although it is not the policy of the Postal Service to interfere with the private lives of employees, it does require that postal personnel be honest, reliable, trustworthy, courteous, and of good character and reputation. The Federal Standards of Ethical Conduct referenced in 662.1 also contain regulations governing the off duty behavior of postal employees. Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal service. Conviction for a violation of any criminal statute may be grounds for disciplinary action against an employee, including removal of the employee, in addition to any other penalty imposed pursuant to statute.   Employees are expected to maintain harmonious working relationships and not do anything that would contribute to an unpleasant working environment;

- ELM § 665.3: Employees will cooperate in any postal investigation;

73 IF, Exhibit 11.
74 IF, Exhibit 12.
75 IF, Exhibit 13.
76 Exhibit 5, attached.

- ELM § 666.51: Employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual will nevertheless carry out the order and immediately file a protest in writing to the official in charge of the installation, or appeal through official channels. This policy is an extension of other existing polices including the Postal Service Joint Statement on Violence and Behavior in the Workplace; and,

- Capital Cluster Policy: ...violence or threats of violence will be taken seriously and will not be tolerated by anyone at any level of the postal service. This includes, but in not limited to: any acts of profanity that leads to a hostile workplaces and any employee harassment or intimidation, including verbal psychological and sexual.

The Inspection Service interviewed the parties and prepared their Investigative Memorandum. Although there was no determination made, the witnesses admit seeing McAlister hit, push and place hands on Fauntleroy, which is a violation of the Postal Service's zero tolerance policy. Despite McAlister's allegations of discrimination, the Postal Service has articulated legitimate non-discriminatory reasons for placing her on emergency suspension and subsequently removing her. Her sex, age, disability and/or prior EEO activity were never factors in the Postal Service's decisions.[77] Further, McAlister has failed to introduce any evidence to support her allegations that the Postal Service's reasons are a pretext for discrimination. As a result, her argument is without merit and therefore fails.

F.    **McAlister's claims should be held in abeyance pursuant to 29 C.F.R. 1614.301(c) because her claims are currently pending binding arbitration.**

McAlister's EEO hearing request should be held in abeyance pending the outcome of the scheduled arbitration under the collective bargaining agreement and

---

[77] IF, Affidavit B, pp. 6 & 13 & Affidavit C, pp. 5 & 10.

McAlister – PS Motion for Findings of Facts and Conclusions of Law without a Hearing                    16    22

subsequent decision. She filed a grievance alleging discrimination under Article 2[78] of the national collective bargaining agreement on which was heard at Step 2 on November 4, 2005 which was subsequently denied on November 9, 2005, finding no violation of the national collective bargaining agreement.[79] On November 10, 2005, the grievance was appealed to arbitration and is currently scheduled for arbitration on September 13, 2006.[80] McAlister likewise is raising the same issue regarding the Emergency Placement and Notice of Removal in this EEO that was denied during the grievance and now scheduled for binding arbitration (which involves her allegation of discrimination). In *Blue v. U.S. Postal Service*[81] the AJ held the hearing request in abeyance pursuant to 29 C.F.R. 1614.301(c) because of the pending arbitration of the appellant's allegations under the collective bargaining agreement. After the arbitrator upheld the agency's termination action, the AJ granted the agency's motion pursuant to our regulation at 29 C.F.R. 1614.109(e), and issued a recommended decision on November 6, 1995, finding no discrimination. Likewise, McAlister's hearing request must be held in abeyance pending the outcome of the binding arbitration. The Postal Service respectfully requests the Administrative Judge to hold McAlister's complaint in abeyance pending the arbitration decision and then dismiss her complaint in its entirety for failure to state a claim, and enter judgment in favor of the Postal Service.

---

78 Article 2, prohibits discrimination on the basis of race, color, creed, religion, national origin, sex, age or marital status. IF, Exhibit 9.

79 Collective Bargaining Agreement Article 2 attached as Exhibit 6. Article 2 prohibits discrimination. Article 2.4 further states that "bargaining-unit employees ...should not pursue essentially contractual matters simultaneously under the grievance and EEO process."

80 Exhibit 3, attached.

81 *Blue v. U.S. Postal Service*, EEOC Appeal No. 01962361 (May 12, 1998); *Williams v. U.S. Postal Service*, EEOC Appeal No. 01990035 (April 25, 2000).

## V. CONCLUSION

For the foregoing reasons, the Postal Service requests that the Commission dismiss McAlister's complaint pursuant to 29 C.F.R. §§ 1614.107(a)(1), 1614.109(b) and 1614.109(g), because she has no claim on which relief can be granted and because there are no genuine issues of material fact or of credibility that would require a hearing to resolve. The Postal Service is entitled to judgment as a matter of law because McAlister cannot establish a *prima facie* case of discrimination on the grounds of sex, age, disability or retaliation.

Respectfully submitted,

Karla M Malone
Paralegal Specialist
United States Postal Service
Capital Metro Law Department
400 Virginia Ave, SW, Suite 650
Washington, DC 20024-2730
(202) 314-6800
(202) 314-6820 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the POSTAL SERVICE'S MOTION TO DISMISS PURSUANT TO 29 C.F.R. §§ 1614.107(a)(1) AND 1614.109(B), OR, ALTERNATIVELY, FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW WITHOUT A HEARING PURSUANT TO 29 C.F.R. § 1614.109(G) was sent by Express mail to the following:

### EEOC

Judge Francis del Toro
Administrative Judge
1801 L. Street, NW, Suite 100
Washington DC 20507

### COMPLAINANT

Angela McAlister
5524 Kennedy Street
Riverdale, MD 20737

### COMPLAINANT'S REPRESENTATIVE

Veola Jackson
5724 Northwood Drive
Baltimore, MD 21212-3218


Karla M Malone
Paralegal Specialist

August 23, 2006

## UNITED STATES POSTAL SERVICE
### EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF

```
Angela D. McAlister,            )
    Complainant,                )   Date:      September 25, 2006
                                )
                                )   Agency Case No.  4K-200-0006-06
        v.                      )
                                )   EEOC No.        570-2006-00357X
John E. Potter,                 )
Postmaster General,             )
U. S. Postal Service,           )
Capital Metro Operations,       )
    Agency.                     )
_____)
```

### NOTICE OF FINAL ACTION

This will be the Agency's **Notice of Final Action**, in accordance with 29 C.F.R., Part 1614.110(a) on the above-cited discrimination complaint filed on December 16, 2005. The complainant alleged discrimination based on race (Black), sex (Female), age (D.O.B.- 8/15/56), mental disability (Stress), and retaliation (Prior EEO activity), when: (1) on September 1, 2005, she was put in Emergency Placement in Off-Duty Status Without Pay; and, (2) on October 17, 2005, she was issued a Notice of Removal.

On September 12, 2006, EEOC Administrative Judge Frances del Toro issued a summary judgment decision finding no discrimination by the agency against the complainant. This decision was received by the Postal Service on September 15, 2006.

I have reviewed the entire record and I have decided to implement the decision of the Administrative Judge.

### COMPLAINANT'S APPEAL RIGHTS

*Right to file a civil action*

If you are dissatisfied with this final agency decision, you may file a civil action in an appropriate U.S. District Court **within 90 calendar days** of your receipt of this decision. If you choose

to file a civil action, that action should be captioned <u>Angela D.</u>
<u>McAlister vs John E. Potter, Postmaster General, U.S. Postal</u>
<u>Service</u>. You may also request the court to appoint an attorney for
you and to authorize the commencement of that action without the
payment of fees, costs, or security in such circumstances as the
court deems just.  Your application must be filed within the same
90-day time period for filing the civil action.

### *Appeal to the Equal Employment Opportunity Commission*

In lieu of filing a civil action, you may appeal to the Equal
Employment Opportunity Commission **within 30 calendar days** of the
date of your receipt of this decision, or, if you are represented
by an attorney, **within 30 calendar days** of your attorney's receipt
of the decision.  The appeal must be in writing and filed with the
Director, Office of Federal Operations, Equal Employment
Opportunity Commission, PO Box 19848, Washington, DC  20036-0848,
or by personal delivery to 1801 L Street NW 5th Floor, Washington,
DC 20507, or facsimile to (202) 663-7022.  The complainant should
use PS Form 3573, Notice of Appeal/Petition, (attached to the
agency's decision) and should indicate what he or she is
appealing.  Any supporting statement or brief must be submitted to
the EEOC within 30 calendar days of filing the appeal. A copy of
the appeal and any supporting documentation must also be submitted
to the agency's designated office:  National EEO Investigative
Services Office, U. S. Postal Service, P. O. Box 21979, Tampa,
Florida  33622-1979.  In or attached to the appeal to the EEOC,
you must certify the date and method by which service of the
appeal was made on the agency's office.

Failure to file within the 30-day period could result in the
EEOC's dismissal of the appeal unless you explain, in writing,
extenuating circumstances which prevented filing within the
prescribed time limit.  In this event, extending the time limit
and accepting the appeal will be discretionary with the EEOC.

If you file an appeal with the EEOC's Office of Federal
Operations, you may thereafter file a civil action in an
appropriate U.S. District Court **within 90 calendar days** of your
receipt of the Office of Federal Operations' decision.  A civil
action may also be filed after 180 calendar days of your appeal to

the EEOC, if you have not received a final decision on your appeal.

Brenda Morrison-Wesley
EEO Compliance & Appeals Specialist
Capital Metro Operations

Attachments:
1.    Certificate of Service
2.    PS Form 3573, "Notice of Appeal/Petition" (Complainant and
      Complainant's representative, if an attorney)

- 3 -

*UNITED STATES POSTAL SERVICE*
*EQUAL EMPLOYMENT OPPORTUNITY CASE*
*IN THE MATTER OF*

*Angela D. McAlister, Complainant*
*Agency Case No. 4K-200-0006-06*
*EEOC No. 570-2006-00357X*

### CERTIFICATE OF SERVICE

For timeliness purposes, it is presumed that the Notice of Final
Action was received by the following individuals within five (5)
calendar days after it was mailed on the date indicated below.

**COMPLAINANT:**
ANGELA D MCALISTER
5524 KENNEDY STREET
RIVERDALE MD  20737-2418

**COMPLAINANT'S REPRESENTATIVE:**
VEOLA JACKSON
5724 NORTHWOOD DRIVE
BALTIMORE MD  21212-3218

**AGENCY'S REPRESENTATIVE:**
KARLA M MALONE
CAPITAL METRO LAW OFFICE
400 VIRGINIA AVENUE SW STE 650
WASHINGTON DC 20024-2730

**ADMINISTRATIVE JUDGE:**
FRANCES DEL TORO
WASHINGTON FIELD OFFICE
1801 L STREET NW STE 100
WASHINGTON DC  20507-0001

_9/25/06_
Date

OFFICE OF EEO COMPLIANCE AND APPEALS
CAPITAL METRO OPERATIONS
US POSTAL SERVICE
PO BOX 1730
ASHBURN VA  20146-1730

Director
Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

Re: EEO No. 57-2006-0035x
Agency No. 4k-200-006-06

Dear Sir,

The complainant in the above case disagrees with the judge's decision. The complainant has been discriminated against and can prove it if given a chance to a hearing. During the entire order dated June 5, 2006, the judge rendered orders for both parties to carry out. Neither party complied. When the agency filed a motion to dismiss and then the complainant was mailed a decision in favor of the agency. It took the complainant until now to locate important evidence that the agency had in its possessions all the time. The case mentioned in the Complainants affidavit concerning the two black males that were in an altercation appear 6 months prior to the McAlister case.

The complainant stated in her affidavit that she was treated different. (Affidavit A) Whereas a male supervisor attacked an employee and was not treated in the same manner. The agency never addressed this important issue. Why?

Question-13 of Affidavit A, To your knowledge were there other employees in the same chain of command with similar circumstances as you who were not put on Emergency Placement in an off duty status without pay. If so identify the person(s) by name, sex, and age (if know, and position/title) Now given a nature of removal the complainant answered the question, yes

Carrier, Sidney Perry, black male, was elbowed by Supervisor, Brian Hubbard, black male, ages unknown. Both were under the zero tolerance rule. Exhibit 1- The incident occurred. – Inspection Report

Mr. Hubbard was sent home that day with pay, for one day. Mr. Perry was also sent home and paid, for only one day, and both returned to work.

Documents are enclosed to show that the incident did happen, including grievance papers.

It showed that the supervisor in charge Mr. Payne sent both employees off duty with pay, in which this is what supposed to happen. It also reveals that the

1

manager interviewed several employees who testified that the supervisor did elbow the carrier. Management did not interview other employees, in McAlister case. Question, why wasn't the complainants cast handled the same way?

Why didn't the inspections service handle the two cases the same?

Nancy Carreas, Manager gave testimony against the complainant; whereas she was not on duty the day of the incident.

Evidence in a hearing will prove that Carreas had a negative reaction against the complainant because of complainants injury occurred on duty.

When asked about the case between Perry and Hubbard, she repeats, she was not aware. This is unlikely since she worked on the same floor, tour, and section as was the incident.

Negativity travels fast. Mr. Hubbard was then sent to Ward Place, another Washington, D.C. station to work without loosing a day's pay.

District court transcript shows that Mr. Fauntleroy admits under oath in court that he snatched the leave slip out of the complainant's hand. This proves he was the aggressor.

The agency has turned the EEO complaint around to fit their reasoning involving her husband.

A hearing will prove discrimination and show that the complainant has proven a prime facie case.

Investigation reveals other employees have agreed to come forward, to tell the truth of what happened that day. The agency made no attempt to reach out to these carriers and co-workers because of what they will testify to.

Melody Gaskins, Area Manager in her affidavit answering to question (4) that the employees were placed on 16-7. Emergency Placement

Emergency placement, reason being the zero tolerance states that whenever there is a physical or oral altercation both parties are to be put off the clock as Mr. Payne, Manager did in the Parry, Hubbard Case.

In this case only the complainant was put off the clock. Even after Mr. Fauntleroy admits to snatching the leave slip. Witnesses will testify how the supervisor, Fauntleroy harassed the complainant, Called her crazy, snatched the leave slip that is a federal legal document, bawled it up disposed of it, scratched it up which is against the law, but yet he deserves no punishment for his actions.

Enclosed is a copy of the zero tolerance ruling signed by the agency and the carrier's union, also.

The agency speaks of the leave slip 3971 but never produces the leave slip. Why? Mr. Fauntleroy bawls is up and disposed of it in an angry manner. Manager Carreas has showed negativity against the complainant. The

Complainant had an injury on August 17, 2005 and once she reported the incident show was showed negativity. Enclosed are letters written by Carreas telling that the complainant told her about her medical problems, however, in her affidavit Carreas swears that she was not aware of the complainant medical problem. Whenever questioned about the complainant's injury, Carreas brings up the incident which happened approx 15 days apart.

The complainant was denied the right to benefits because of Carreas sending negativity about the incident on 9-1-05 where are the injury happened on 8-17-05. Linda Young, Comp. Specialist in the Complainant told the agency to pay her because she was entitled to payment, Carreas refused.

Carreas makes a statement that has nothing to do with the incident on 8-17-06. For someone not present has a lot of input.

The complainant works under the same chain of command as Perry & Hubbard. The discrimination takes place stating that both employees should have been put off the clock on Sept. 1, 2005. Both should have been charged with the zero tolerance law.

Once the supervisor Fauntleroy snatched the leave slip, he turned his back out of reflexes the complainant reached for the slip stating "you don't snatch nothing from me" He admits he turned his back to the complainant. He through the leave slip in the trash.

Why the agency has not produced the 3971 leave slip, an official document.

According to the law he has no right to take the leave slip, scratch on it, bawl it up and discarded it in the trash. He under oath admits to this.

Testimony will show that the supervisor harassed the complainant and that is part of the zero tolerance policy.

The main question here is why are the male supervisors treated differently that the complainant? Once again the complainant has proved a prime-facie case of discrimination.

The two managers as well as the complainant are under the same managers that signed both zero tolerance policies. But yet both were handled entirely different, with a discriminating outcome towards the complainants. The complainant is requesting a hearing in order to give her the opportunity to prove her case.

Witness to be subpoena are:

1) Rosita Shaw – witness to the incident on September 1, 2005
2) Jean Dickerson- witnessed the incident on September 1, 2005

③

3) John Harper- Shop steward- witness to the incident on September 1, 2005 Important fact Why manager Carreas took a shop steward in the investigation room who was not present instead of Mr. John Harper who witness the entire incident.

4) Sidney Perry – Bethesda Post Office Carrier – testify to supervisor elbowed him

5) Johnnie Easton – The complainant being harassed be Supr, Fauntleroy.

Ex. A –Inspections service report of the Perry& Hubbard incident Exhibit 5 page 1 of 1 reveals that the Pre. Disciplinary interview dated 9-12-05 was set at 12:00am. The midnight shift. All employees involved are on day shift. Often Ms. McAlister called to inform that she would not be there at the time, no one was there to answer the phone, This was done on the shift in which your work hours are. The Postal Stations are closed on midnight shift. Exhibit 6 page 2 of 2, The inspection report reveals that the only witnesses were the management officials and the complainants husband's statement toward they twisted to their benefit. The agency submitted exhibit 11 page 5 of 5 that reveals that section 8 Review of discipline –Disciplinary action by the supervisor has first been reviewed and concursed in by the installation heard or disagree.

If you look at exhibit 4 page 1 of 1 the only signature on this emergency suspension is Vincent McKinney and no higher management official concurring the action. This is a violation of article 16.8 The emergency placement should have been over turned. The complainant has proven a prime a facie case and therefore request hearing.

Mis.correspondence page 2 of 14 the investigation requested an affidavit from Sup, McKinney who at this time had not provided one. The investigator request several times with no response. Let the record show that Mr. McKinney signed the emergency placement but was not present at the time of the incident and has refused to give an affidavit.

Affidavit C #4 and 5 Carreas states in #4 she had no knowledge of Mr. Hubbard's supervisors were. This is an intruth. #5 where they in the same chain of command. She states she ws not awars. This is an intruth.

Carreas states on affidavit C that management waved not pay complainant. Complainant was constantly denied pay because she used formerly medical leave or when management would ask her to cancel doctor appt and complainant refused.

Carreas entire affidavit shows hostility toward the complainant and not concerning the incident that occurred. As if I will use this to get you back syndrome.

4)

The complainant request a hearing in order to reveal the facts of discrimination that has been put before her.

Thank you,
Angela McAlister
Complaintant

x *Angela D McAlister*

*October 23, 2006*

C.C. *National EEO Investigative*
*Services Office*
*U.S. Postal Service*
*P.O. Box 21979*
*Tampa, Fla. 33622-1979*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

Nov 17, 2006

RECEIVED
NOV 24 2006
NEEOISO

USPS - Capital-Metro
NEEOSIO - Appeals
P.O.B. 21979
Tampa, FL 33622

RE: Angela McAlister
Docket # : 0120070498
Filed    : 10/25/06
Agency Number(s): 4K200000606

Dear Sir/Madam:

This is to acknowledge that the above referenced appeal has been received on the date indicated. The agency must submit the complaint file, along with any related or consolidated complaint files, to the Office of Federal Operations WITHIN 30 DAYS OF INITIAL NOTIFICATION THAT THE COMPLAINANT HAS FILED AN APPEAL. See 29 C.F.R. Section 1614.403(e).

In addition, any related material developed subsequent to the initial submission of the complaint file, i.e., attorney feeds, supplemental invest- igation, etc. must be forwarded upon notification of any related appeal. The agency must ensure that all materials submitted to the Commission have also been provided to the complainant. Enclosed is an "Agency Checklist" for your use in identifying records to submit in your agency file.

IF THE COMPLAINT FILE IS NOT SUBMITTED TO THIS OFFICE WITHIN THE TIME FRAME SET FORTH ABOVE, THE COMMISSION MAY TAKE APPROPRIATE ACTION, INCLUDING DRAWING AN INFERENCE ADVERSE TO THE AGENCY IN ALL MATTERS WHERE THE EVIDENCE IS NOT AVAILABLE TO THE COMMISSION. THIS COULD RESULT IN A DECISION UNFAVORABLE TO THE AGENCY.

The agency must submit the complaint file within the time frame specified above regardless of whether or not the complainant has timely provided the agency a copy of any supporting statement or brief, and regardless of whether or not the agency's comments or brief relative to the appeal itself are completed.

Any agency statement or brief in opposition to an appeal must be submitted to the Commission and served on the complainant within 30 days of receipt of the statement or brief supporting the appeal. If no statement or brief supporting the appeal is filed, the statement or brief in opposition to the appeal must be filed within 60 days of the receipt of the appeal. See 29 C.F.R.1614.403 (f). The Commission will accept statements or briefs in opposition to an appeal by facsimile transmission (Fax Number 202-663-7022) provided they are no more than ten (10) pages long.

①



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

The agency should reference the above docket number(s) in all submissions and correspondence to the Commission.

Sincerely,

*Robert J Barnhart*

Robert J. Barnhart, Director
Compliance and Control Division
Office of Federal Operations

Enclosure

CC:

CERTIFICATE OF SERVICE

I certify that the Notification of Appeal/Request for Complaint File was sent by regular mail this day to the agency.

EQUAL OPPORTUNITY ASSISTANT: Christine Burkett

DATE: Nov 17, 2006

②

**UNITED STATES OF AMERICA**
**EQUAL EMPLOYMENT OPPORTUNITIES COMMISSION**
**OFFICE OF FEDERAL OPERATIONS**
**WASHINGTON, DC**

ANGELA D. MCALISTER,                  §
    Complainant,                         §          OFO Appeal No: Unknown
                                         §
v.                                    §          EEOC NO. 570-2006-00357X
                                         §
JOHN E. POTTER,                       §          AGENCY NO.  4K-200-0006-06
Postmaster General,                   §
United States Postal Service,         §
    Agency.                               §

<u>**POSTAL SERVICE'S BRIEF IN OPPOSITION**
**TO COMPLAINANT'S APPEAL**</u>

The OFO should affirm the Administrative Judge's (AJ) Decision and the Postal

Service's final action that fully implemented the Administrative Judge's post-hearing

decision which found that Angela McAlister failed to prove that she was subjected to

discrimination because of sex, age, disability discrimination or retaliation when 1) on

September 1, 2005 she was paced in an Emergency Placement in Off-Duty Status and 2)

on October 17, 2005 she was issued a Notice of Removal.

McAlister's sole argument on appeal is that she was discriminated against and

that the AJ improperly issued a decision in favor of the Postal Service. She failed to

prove her allegation. Because she is presenting evidence that is not part of the record for

the first time, her submitted documents should not be considered in this appeal.

<u>**Background**</u>

McAlister was a mail processing clerk at the Curseen-Morris Post Office,

Washington DC.[1]  On September 1, 2005, McAlister approached her supervisor Bobby

---

1 IF, Affidavit A; IF, Exhibit 1.

Fauntleroy with a leave slip (PS 3971) stating she was denied access to the medical unit. Fauntleroy stated that she was not denied access to the medical unit, but that McAlister reported to the medical unit before it was open. Fauntleroy informed McAlister that the 3971 was inaccurate. As he proceeded to scratch out the inaccurate information McAlister grabbed the 3971, he then grabbed it back from her and turned around. While he was turned around, McAlister began shoving his and hitting his back before being restrained by Mr. McAlister.[2] He had no role in the Notice of Removal dated October 17, 2005.[3] The assault was witnessed by Jamelle Wood and Herman McAlister.

Nancy Carreras, Manager Curseen-Morris Post Office, placed McAlister on Emergency Placement in Off-duty Status without Pay on September 1, 2005, for assaulting Fauntleroy. Fauntleroy contacted Carreras following the assault stating that McAlister pushed him, hit him several times and was swinging at him. McAlister violated the Postal Service's zero tolerance on violence on the workroom floor. Carreras concurs on all suspensions and removals.[4]

Jamelle Wood, Supervisor Customer Service, Curseen-Morris Main Post Office. Wood witnessed McAlister assaulting Fauntleroy on September 1, 2005. She was responsible, along with Fauntleroy, for making the decision to place McAlister on Emergency Placement on September 1, 2005. Carreras and Vincent McKinney[5] were responsible for the paperwork placing McAlister on Emergency Placement. The Emergency Placement was discussed with Carreras. Wood initiated the Notice of

---

2 IF, Affidavit B; IF, Exhibit 7.

3 IF, Affidavit B.

4 IF, Affidavit C.

5 Vincent McKinney, Supervisor Customer Service, Curseen-Morris signed the Emergency Placement in Off-Duty Status dated September 1, 2005.

Removal and Carreras concurred.[6]  On September 10, 2005, a pre-disciplinary interview (Pre-D) was scheduled with McAlister regarding the September 1, 2005 incident;[7] however, she failed to appear at the pre-discipline interview and failed to provide a reason for her non-attendance.[8]

On September 14, 2005, the Inspection Service completed its investigation regarding the altercation instigated by McAlister.  Herman McAlister admitted that Angela McAlister placed her hand on Fauntleroy's back. Mr. McAlister immediately grabbed is her to keep things from getting worse and escorted her out of the building before security arrived.[9]

McAlister's sex, age, disability and prior protected activity were not factors in management's decisions to issue the Emergency Suspension on September 1, 2005 and the Notice of Removal dated October 17, 2005.[10]

McAlister violated the following Postal Policies and Regulations: Employee and Labor Relations (ELM) § 661.53; ELM § 665.11; ELM § 665.13;  ELM § 665.16: ELM § 665.3; ELM § 666.51; and, the Capital Cluster Policy.[11]

The Postal Service filed its Motion to Dismiss on August 23, 2006. After considering all the evidence in the record, the AJ issued a decision on September 12, 2006, in which he found that the Postal Service did not discriminate against McAlister. The Postal Service fully adopted those findings in its Notice of Final Action of no discrimination on September 25, 2006.  McAlister filed this appeal on October 23, 2006.

---

6 IF, Affidavit D.
7 IF, Exhibit 5.
8 IF, Affidavit B.
9 IF, Exhibit 6.
10 IF, Affidavits B, C & D.
11 Postal Service's Motion for Summary Judgment, pp. 4-5.

## OFO's Standard of Review

Because this is an appeal from a final action adopting in whole the AJ's decision issued without a hearing, pursuant to 29 C.F.R. §1614.109(g)(1) and (g)(2), it is subject to de novo review by the Commission. 29 C.F.R. § 1614.405; *Rhoads – Coleman v. U.S. Postal Service*, EEOC Appeal No. 01A42059 (July 13, 2004). Its review is confined to the evidentiary record considered by the administrative judge; no new or additional evidence submitted for the first time on appeal can be considered. *Leary v. U.S. Postal Service*, EEOC Appeal Nos. 01A51021, 01A50928 (April 26, 2005).

## Argument

**A.    OFO should strike McAlister's evidence submitted on Appeal.**

Because the OFO review is confined to the evidentiary record no new or additional evidence can be submitted or considered for the first time on appeal. *Leary, Id.* McAlister submitted documents not already part of the record with her appeal. EEO Management Directive 110, Ch. 9 § VI.A.3 (1999) provides that no new evidence will be considered on appeal unless there is an affirmative showing that the evidence was not reasonably available prior to or during the investigation. *Gamble v. U.S. Postal Service*, EEOC Appeal No. 01A54872 (November 10, 2006); *Su v. Department of Army*, EEOC Appeal No. 01A54895 (January 5, 2006). McAlister failed to participate in discovery and she failed to respond to the Postal Service's Motion to Dismiss. The information she allegedly provided is not newly discovered evidence as it was readily available during the processing of this complaint. Therefore, OFO should strike any evidence submitted and affirm the AJ's Decision of no discrimination.

**B.    OFO should affirm the Postal Service's Notice of Final Action and the AJ's Decision in favor of the Postal Service because a preponderance of the evidence does not establish that discrimination occurred.**

McAlister assaulted her supervisor.  Two employees, including her husband, witnessed the assault.  McAlister's husband admitted to the Inspection Service that Angela McAlister improperly touched her supervisor.  AS a result she was placed on Emergency Suspension and subsequently terminated.

McAlister alleged that she was subjected to discrimination because of sex, age, disability and retaliation. The anti-discrimination statutes administered by the EEOC prohibit an agency from acting adversely to an employee or applicant because of certain specifically designated classifications. *Cornell-White v. Department of Transportation*, EEOC Appeal No. 01982261 March 27, 2001); *McNeil v. Department of the Army*, EEOC Appeal No. 01941350 (October 4, 1994); *Raytheon Company v. Hernandez*, 540 U.S. 44 (2003).  Discrimination suits require complainant's produce evidence of discrimination. *Rubinstein v. Administration of Tulane Education Fund*, 218 F.3d 392, 400 (5th Cir. 2000), cert. denied 121 S. Ct. 1393 (2001)(*citing and interpreting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000)).  The AJ properly found that she failed to provide evidence to prove her allegations. The AJ's finding is supported by substantial evidence and should be affirmed by the OFO.

In order for McAlister to establish pretext she must show by a preponderance evidence that the Postal Service's reasons were merely a pretext for discrimination. Preponderance of the evidence is defined by Barron's Law Dictionary as "more convincing than the opposing evidence". She failed. In fact, McAlister never provided any response to the Postal Service's Motion to Dismiss.  McAlister failed to come

5

forward with any evidence throughout the discovery process or in response to the Motion

to Dismiss that the Postal Service discriminated against her. *Lane v. U.S. Postal Service*,

EEOC Appeal No. 01A55852 (February 3, 2006)(Complainant failed to respond to

Agency's motion for summary judgment; AJ reviewed the entire record and ruled in

favor of the Agency. OFO affirmed AJ's Decision).

Judge del Torro properly determined that McAlister did not establish by a

preponderance of the evidence unlawful discrimination.

### Conclusion

The AJ considered the record and issued a Decision. He properly applied the law

to the facts and found that McAlister failed to prove that the Postal Service discriminated

against her. The Postal Service fully implemented the AJ's finding of no discrimination.

The OFO should affirm the Postal Service's final decision.

Respectfully submitted,

Karla M Malone
Paralegal Specialist
United States Postal Service
Capital Metro Law Department
8200 Corporate Drive
Landover, MD 20785-2244
Phone: (301) 577-5972

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of November 2006, a true and correct copy of the foregoing Postal Service's Brief in Opposition to Complainant's Appeal was sent to:

**Equal Employment Opportunity Commission**
Office of Federal Operations
P.O. Box 19848
Washington, DC 20036
(202) 663-7022 (Fax)

**Complainant's Representative – via first class mail, postage prepaid**
Veola Jackson
5724 Northwood Drive
Baltimore, MD 21212-3218

**Complainant – via first class mail, postage prepaid**
Angela D. McAlister
5524 Kennedy Street
Riverdale, MD 20737

Karla M Malone

7

⑦

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ANGELA D. MCALISTER,                                )
                                                    )
            Plaintiff                               )
                                                    )
            v.                                      )          Civil Action No. 07-0016 (RMC)
                                                    )
JOHN E. POTTER,                                     )
POSTMASTER GENERAL,                                 )
UNITED STATES POSTAL SERVICE                        )
                                                    )
            Defendants.                             )
_____)

<u>**ORDER**</u>

       Upon consideration of Defendant's Motion to Dismiss and the entire record herein, it is

this _____ day of _____, 2007, hereby ORDERED that said

motion is hereby granted and this case be dismissed.


                                                    _____
                                                    UNITED STATES DISTRICT COURT JUDGE